**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| JOSEPH M. JACKSON, | |
| Plaintiff, | CIVIL ACTION NO. 3:CV-14-015 |
| v. | (JUDGE CAPUTO) |
| EQUIFAX INFORMATION SERVICES, LLC and JOHN DOE, MANAGER, | (MAGISTRATE JUDGE BLEWITT) |
| Defendants. | |

**MEMORANDUM**

Presently before the Court is Magistrate Judge Blewitt's Report and Recommendation (Doc. 7) to the Complaint filed by Plaintiff Joseph M. Jackson ("Jackson"). Magistrate Judge Blewitt recommends that the action be transferred to the United States District Court for the Northern District of Georgia, or, in the alternative, that Jackson's Complaint be dismissed without prejudice. Jackson filed timely objections to the Report and Recommendation. Because the balance of public and private interest factors weigh in favor of transfer, the recommendation to transfer the action will be adopted, and the action will be transferred to the Northern District of Georgia.

**I. Background**

Jackson, an inmate incarcerated at the Oklahoma State Reformatory in Granite, Oklahoma, commenced this action *pro se* against Equifax Information Services, LLC ("Equifax") and manager John Doe (collecitvely, "Defendants") on January 7, 2014 for violation of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq*. (Doc. 1.) Specifically, Jackson alleges that he requested from Equifax a copy of his free credit report. Thereafter, on January 14, 2012, Equifax sought additional information from Jackson. Jackson supplied the information indicating that his mailing address, at that time, was in Lake Harmony, Pennsylvania. The information provided by Jackson further indicates that

for the five years prior to living in Lake Harmony, he was incarcerated in a state prison in Hominy, Oklahoma.

After Jackson supplied the requested information, Equifax still failed to provide a copy of his free credit report. Jackson subsequently filed a complaint with the Federal Trade Commission.

As a result of Defendants' alleged conduct, Jackson suffered emotional distress, grief, humiliation, embarrassment, anger, and disappointment. As relief, Jackson seeks $36,000.00 in actual damages from each Defendant, as well as $36,000.00 in punitive damages from each Defendant. Jackson also demands a jury trial.

On January 9, 2014, Magistrate Judge Blewitt screened Jackson's Complaint and issued the instant Report and Recommendation. Based on the public and private interest factors relevant to the transfer of an action pursuant to 28 U.S.C. § 1404(a), Magistrate Judge Blewitt concludes that the majority of factors weigh in favor of this action being transferred to the United States District Court for the Northern District of Georgia.

On January 28, 2014, Jackson filed objections to the Report and Recommendation. (Doc. 10.) In particular, Jackson objects to the Magistrate Judge's recommendation to transfer this action to the Northern District of Georgia. According to Jackson, while he is currently incarcerated in Oklahoma, his stay there is only temporary. He asserts that he will return to Pennsylvania in the future and his Pennsylvania address is used for his private and personal interests. (Doc. 11, 2.) Jackson further argues that the majority of private and public interest factors weigh in favor of litigating this action in the Middle District of Pennsylvania. Jackson contends that the recommendation to transfer this action should be rejected because

> at all relevant times plaintiff lived in the Middle District of Pennsylvania, chose this Court as his forum, a substantial part of the events or issues giving rise to plaintiff's claims occurred in the Middle District of Pennsylvania, and for all practical purposes, there is no evidence that any witnesses may actually be

> unavailable for trial in the Middle District of Pennsylvania, no evidence that copies of books and records could not be produced in the Middle District of Pennsylvania, no evidence that a judgment of this Court would be unable to be enforced, and it is usually easiest to file in the district in which the claim arose.

(Doc. 10, 6.)[1]

The Report and Recommendation and Jackson's objections thereto are now ripe for review.

## II. Legal Standard

Where objections to the Magistrate Judge's report are filed, the court must conduct a *de novo* review of the contested portions of the report. *Sample v. Diecks*, 885 F.2d 1099, 1106 n.3 (3d Cir. 1989) (citing 28 U.S.C. § 636(b)(1)(c)). However, this only applies to the extent that a party's objections are both timely and specific. *Goney v. Clark*, 749 F.2d 5, 6-7 (3d Cir. 1984) (emphasis added). In conducting a *de novo review*, the court may accept, reject, or modify, in whole or in part, the factual findings or legal conclusions of the magistrate judge. *See* 28 U.S.C. § 636(b)(1); *Owens v. Beard*, 829 F. Supp. 736, 738 (M.D. Pa. 1993). Although the review is *de novo*, the law permits the court to rely on the recommendations of the magistrate judge to the extent it deems proper. *See United States v. Raddatz*, 447 U.S. 667, 675–76, 100 S. Ct. 2406, 65 L. Ed. 2d 424 (1980); *Goney*, 749 F.2d at 7; *Ball v. United States Parole Comm'n*, 849 F.Supp. 328, 330 (M.D. Pa. 1994). Uncontested portions of the report may be reviewed at a standard determined by the district court. *See Thomas v. Arn*, 474 U.S. 140, 154, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985); Goney, 749 F.2d at 7. At the very least, the court should review uncontested portions for clear error or manifest injustice. *See, e.g., Cruz v. Chater*, 990 F.Supp. 375, 376-77 (M.D. Pa. 1998).

---

[1] Since filing his objections to the Report and Recommendation, Jackson has filed two motions to amend his complaint, (Docs. 11; 13), and two motions to appoint counsel. (Docs. 12; 14.)

### III. Discussion

28 U.S.C. § 1404(a) provides: "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought . . . ." 28 U.S.C. § 1404(a). Courts have "broad discretion to determine, on an individualized, case-by-case basis, whether convenience and fairness considerations weigh in favor of transfer." *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 883 (3d Cir. 1995) (citing *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 30-31, 108 S. Ct. 2239, 101 L. Ed. 2d 22 (1988)).

In considering whether to transfer an action pursuant to § 1404(a), courts are not limited to consideration of the three factors enumerated in the statute. *See id*. at 879. Rather, courts should "consider all relevant factors to determine whether on balance the litigation would more conveniently proceed and the interests of justice be better served by transfer to a different forum." *Id*. (citation omitted). Both public and private interest factors are considered in evaluating a transfer under § 1404(a). Private interest factors include: (1) the plaintiff's choice of forum; (2) the defendant's preferred forum; (3) where the claim arose; (4) the convenience of the parties; (5) the convenience of the witnesses, but only to the extent that the witnesses may be unavailable for trial in one of the fora; and (6) the location of books and records, again, only to the extent that they may not be available in one of the fora. *Jumara*, 55 F.3d at 879. Relevant public interest considerations include: (1) the enforceability of the judgment; (2) practical considerations that could make the trial easier, quicker, or less expensive; (3) court congestion; (4) local interest in the controversy; (5) public policies of the fora; and (6) the trial judge's familiarity with the applicable state law in diversity cases. *Id*. at 879-80.

Before considering the private and public interest factors, the court must determine whether the action "might have been brought" in the proposed transferee district. *See High*

*River Ltd. P'ship v. Mylan Labs., Inc.*, 353 F. Supp. 2d 487, 492 (M.D. Pa. 2005) (citation omitted). Because this action could have been brought in the Northern District of Georgia, consideration of the private and public interest factors is warranted.

**A.    Private Interest Factors**

"The first step in analyzing the private interest factors is to determine the proper weight to be accorded to the plaintiff's choice of forum. Where the plaintiff has chosen a legally correct forum which is the forum of the plaintiff's residence, there is a strong presumption in favor of the plaintiff's choice which should not be lightly disturbed." *Lepre v. Lukus*, No. 12cv270, 2013 WL 1290989, at *10 (W.D. Pa. Mar. 26, 2013) (citing *Shutte v. Armco Steel Co.*, 431 F.2d 22, 25 (3d Cir. 1970), *cert. denied*, 401 U.S. 910, 91 S. Ct. 871, 27 L. Ed. 2d 808 (1971). In this case, Jackson filed the Complaint in the Middle District of Pennsylvania, and, although he is incarcerated in Oklahoma, he indicates that he will return to Pennsylvania in the future. Thus, Jackson commenced this litigation in his home forum. *Cf. Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 248 (3d Cir. 2013) ("Prisoners presumptively retain their prior citizenship when the gates close behind them."); *Pierro v. Kugel*, 386 F. App'x 308, 309 (3d Cir. 2010) ("the domicile of a prisoner before his imprisonment presumptively remains his domicile during his imprisonment. That presumption, however, may be rebutted by showing a bona fide intent to remain in the state of incarceration on release."). Accordingly, Jackson's decision to litigate this action in Pennsylvania is entitled to deference.

Nevertheless, "the plaintiff's choice is given less deference when none of the operative facts underlying the claim occurred there." *Synthes, Inc. v. Knapp*, - - - F. Supp. 2d - - -, 2013 WL 5594706, at *5 (E.D. Pa. Oct. 11, 2013); *InfoMC, Inc. v. Comprehensive Behavioral Care, Inc.*, No. 10-4907, 2012 WL 1114360, at *13 (E.D. Pa. Mar. 30, 2012) ("when the cause of action did not occur in, or few of the operative facts took place in the

selected forum, plaintiff's choice is afforded less weight."). Here, as recognized by Magistrate Judge Blewitt, most of the operative facts occurred in Atlanta, Georgia, where Jackson submitted his request for a credit report and where Equifax maintains its headquarters. Although Jackson is a Pennsylvania citizen that filed suit in his home forum, as the majority of facts relevant to Jackson's claim occurred outside of Pennsylvania, less deference is afforded to his choice of forum. *See, e.g., InfoMC*, 2012 WL 1114360, at *14. As such, the first private interest factor weighs slightly against transfer.

As noted by Magistrate Judge Blewitt, however, a number of the remaining private interest factors weigh in favor of transfer. While the defendant's preference is entitled to considerably less weight than the plaintiff's choice of forum because "the purpose of a venue transfer is not to shift inconvenience from one party to another, *see Murphy v. Trans Union, LLC*, No. 12-499, 2012 WL 3536322, at *4 (E.D. Pa. Aug. 15, 2012), this factor nonetheless weighs slightly in favor of a transfer. Additionally, for the reasons previously described, the third private interest factor, whether the claim arose elsewhere, weighs strongly in favor of transfer because a majority of the operative facts occurred in the Northern District of Georgia. Indeed, "'[m]ultiple courts considering § 1404 transfer motions in FCRA cases have noted that the situs of the material events . . . is generally the place where the defendant credit reporting agency conducted its business.'" *Id*. at *4 n.6 (quoting *Smith v. Hireright Solutions, Inc.*, No, 09-6007, 2010 WL 2270541, at *4 (E.D. Pa. June 7, 2010) (collecting cases)).

The fourth and fifth private interest factors, the convenience of the parties and the witnesses, weigh slightly in favor of transfer because Equifax's headquarters are located in the Northern District of Georgia and the majority of operative events occurred in that district.

The final private interest factor, the location of books and records, is neutral, as the

6

"technological advances of recent years have significantly reduced the weight of this factor in the balance of convenience analysis." *Lomanno v. Black*, 285 F. Supp. 2d 637, 647 (E.D. Pa. 2003). There is no reason to believe that relevant records and documents could not be transmitted electronically. Thus, this factor does not affect the transfer analysis.

**B.    Public Interest Factors**

"Consideration of public factors under *Jumara* requires the court to evaluate each forum and determine where the litigation can proceed in the most efficient and inexpensive fashion." *Hollander v. Hospira, Inc.*, No. 10-235, 2010 WL 4751669, at *5 (E.D. Pa. Nov. 22, 2010) (citing *In re Amkor Tech.*, No. 06-298, 2006 WL 3857488, at *6 (E.D. Pa. Dec. 28, 2006)). While a number of the public interest factors are neutral, the local interest factor weighs in favor of transfer to the Northern District of Georgia because, for the reasons discussed above, most of the conduct giving rise to Jackson's claim occurred in that district. As the local interest in litigating this action is greater in Georgia than Pennsylvania, this factor weighs slightly in favor of transfer.

Additionally, practical considerations relating to efficiency support this action being transferred to the Northern District of Georgia. In particular, the witnesses and documents relevant to Jackson's claim are likely to be located in Atlanta, Georgia. As such, trial in the Northern District of Georgia would likely be significantly easier and less expensive. The practical considerations therefore weigh in favor of transfer.

The remaining public interest factors are neutral. Since Jackson's claim is predicated on federal law, the factor concerning the familiarity of the trial judge with state law is not implicated in this case. Likewise, the enforceability of judgment, court congestion, and the public policies of the two fora factors do not impact the transfer analysis.

**C.    Balancing of Factors**

Overall, upon consideration of the private and public interest factors, the majority of

factors weigh in favor of transferring this action to the United States District Court for the Northern District of Georgia. Jackson's choice of forum is entitled to some deference and weighs slightly against transferring this action. Nevertheless, his choice is entitled to less deference because nearly all of the operative facts relevant to his claim occurred in the Northern District of Georgia. Thus, as the claim arose in the Northern District of Georgia, this factor strongly weighs in favor of transfer. Additionally, the convenience of the parties and witnesses factors weigh slightly in favor of transfer. And, while most of the public interest factors are neutral, the local interests and practical considerations concerning efficiency factors weigh in favor of transfer. Thus, the balance of private and public interest factors weigh in favor of this action being transferred pursuant to § 1404(a).

### IV. Conclusion

For the above stated reasons, Magistrate Judge Blewitt's recommendation to transfer the action will be adopted, and the action will be transferred to the United States District Court for the Northern District of Georgia.[2]

February 28, 2014  /s/ A. Richard Caputo
Date  A. Richard Caputo
 United States District Judge

---

[2] Because the action will be transferred, I will not address Jackson's motions to amend the complaint and for appointment of counsel. (Docs. 11-14.)